IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02218-PAB-KLM

KENNETH R. ZARTNER,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
SHAWN L. MILLER,
DAVID PACHECO,
ROBERT MAZOTTI,
MARIO GALLARDO,
CRAIG PENSON,
JEFFREY STEED,
RICHARD GILSTRAP, and
APRIL KULHANEK, R.N.,

     Defendants.

---

## ORDER

---

     This matter is before the Court on Defendant City and County of Denver's Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 36], wherein the City and County of Denver ("the City") seeks to dismiss plaintiff's claim against it pursuant to Fed. R. Civ. P. 12(b)(6). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

     On October 9, 2013, plaintiff was arrested by Denver Police Officer Shawn Miller. Docket No. 27 at 3, ¶ 12. Officer Miller placed plaintiff in handcuffs, which he made

---

[1]The facts are taken from Mr. Zartner's amended complaint [Docket No. 27] and are presumed to be true for the purposes of this order.

"sadistically tight," and transported him to a police substation. *Id.* During the booking process, plaintiff resisted being fingerprinted because "of the excruciating pain he was experiencing as a result of the injury to his wrists by the sadistic handcuffing by Defendant Miller." *Id*. at 5, ¶ 14.  Officers Pacheco, Mazotti, Gallardo, and Penson took plaintiff's fingerprints by force and exacerbated his handcuff-related injury. *Id.* at 5, ¶ 16.  On October 14, 2013, plaintiff was evaluated by a doctor who ordered an x-ray. *Id.* at 6, ¶ 19.  The x-ray showed a fracture in plaintiff's wrist. *Id.* at 6, ¶ 20.  On November 26, 2013, plaintiff was again arrested. *Id.* at 6-7, ¶¶ 23.  Plaintiff was handcuffed and involuntarily restrained to a bench in a holding cell despite his protests that he was suffering from a prior injury to his wrists and hands. *Id.* at 7, ¶ 25.  In 2014, plaintiff was diagnosed with nerve damage to both wrists, which plaintiff states was "caused by the cumulative trauma by the Defendants on October 9 and 10, 2013 and November 27, 2013." *Id.* at 8, ¶¶ 30-31.

Officer Miller has been a Denver police officer for ten years. *Id.* at 3-5, ¶ 13. The Denver Police Department has received at least 40 complaints against Officer Miller, 17 of which alleged excessive use of force. *Id.*  Denver Police Commander Matthew Murray, who plaintiff states was authorized to speak on behalf of the Denver Police Department regarding an investigation into Officer Miller following his February 27, 2015 reassignment to a desk job, stated in reference to Officer Miller:

> The warning signs were being flashed at us.  The problem is what we did with them after we got the warning signs.  We didn't follow through in a way to help correct his behavior to prevent a situation where what we are facing now, where we have liability on the city and on the department.

*Id.*  The amended complaint claims that the Denver Police Department had a policy of

not taking corrective action, and that "under the leadership of police chief Robert White, who took office on December 12, 2011, the police department has changed the way it responds to performance reviews." *Id.* The complaint also alleges that the Denver Police Department's "[f]ailure to take corrective action with respect to repeated constitutional violations is evidence of deliberate indifference." *Id.* In February 2015, Officer Miller was placed on non-line assignment while the Denver Police Department investigated his performance. *Id.*

## II. STANDARD OF REVIEW

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Rule 8(a)'s "short and plain statement" mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, a court need not accept conclusory allegations.

3

*Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (ellipses omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson*, 534 F.3d at 1286.

The pleading rules serve two purposes: (1) they ensure that defendants know the actual grounds of the claims against them, allowing them to prepare a defense; and (2) they avoid the costly undertaking of civil discovery on claims that are largely groundless. *Bryson*, 534 F.3d at 1287.

## III.  ANALYSIS

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is

4

plausible (1) that the municipal employee committed a constitutional violation; and (2)

that a municipal policy or custom was the moving force behind the constitutional

deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  A municipal

policy or custom can take the form of "(1) a formal regulation or policy statement; (2) an

informal custom amoun[ting] to a widespread practice that, although not authorized by

written law or express municipal policy, is so permanent and well settled as to constitute

a custom or usage with the force of law; (3) the decisions of employees with final

policymaking authority; (4) the ratification by such final policymakers of the decisions –

and the basis for them – of subordinates to whom authority was delegated subject to

these policymakers' review and approval; or (5) the failure to adequately train or

supervise employees, so long as that failure results from 'deliberate indifference' to the

injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th

Cir. 2010) (citations omitted).

The purported policy or custom that plaintiff focuses on in this case is a failure to

adequately train or supervise employees.  The amended complaint repeatedly refers to

the Denver Police Department's failure to "take corrective action" with respect to Officer

Miller.  Docket No. 27 at 3-5, ¶ 13 (noting "the complete lack of corrective action," that

"Miller's behavior triggered reviews but never led to corrective action," and that on

February 27, 2015 "corrective action was commenced with respect to Defendant

Miller").  Plaintiff's use of the term "corrective action" does not fit neatly within the rubric

of training or supervision, but rather appears to blend the two, addressing both

processes of investigating complaints and retraining officers.  Docket No. 27 at 10, ¶ 42

(while "Denver reviewed complaints regarding its police officers[, it] had a policy of not

taking corrective action designed to modify their behavior").

Plaintiff also argues that the allegations in the amended complaint fit under the second category in *Bryson,* describing an informal custom amounting to a widespread practice.  Docket No. 48 at 6.  However, the factual allegations regarding the Denver Police Department's handling of complaints against officers relate exclusively to Officer Miller.  *See* Docket No. 27 at 3-5, ¶ 13.  While plaintiff suggests that Commander Murray's statements constitute a tacit admission that the Denver Police Department had a department-wide policy of not taking corrective action, *id.*, this is legal argument, unsupported by any facts.  Accordingly, the relevant legal theory put forward by the amended complaint relates to the failure to train or supervise Officer Miller.

To adequately state a claim against a municipality for failure to train its police officers in the use of force, plaintiff must allege:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations [sic] with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the party [sic] of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (citing *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000); *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  This reasoning applies to claims related to a failure to supervise as well.  Thus, while the test stated by *Carr* applies explicitly to "failure to train" cases, those same requirements should inform the Court's analysis of plaintiff's *Monell* claim regarding "corrective action."

6

### A.  Failure to Train

The Court agrees with the City that plaintiff fails to state a claim against the City for failure to train.  The amended complaint makes no reference to the Denver Police Department's training protocols, inadequate or otherwise.  *See generally* Docket No. 27.  Even if plaintiff did allege that Officer Miller's training was deficient in some salient respect, municipal liability for a failure to train cannot typically be supported by allegations related to a particular officer.  *Harris*, 489 U.S. at 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").  Although "a single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy," *Carr*, 337 F.3d at 1229, because plaintiff's amended complaint makes no allegations related to Officer Miller's training or the training of his counterparts, plaintiff fails to state a claim against the City on a failure to train theory.

### B.  Failure to Supervise

The City argues that plaintiff's *Monell* claim for failure to supervise should be dismissed for three reasons.[2]  First, plaintiff's municipal liability claim is deficient on its face because it does not allege specific facts that establish a plausible claim.  Docket No. 36 at 6.  Second, plaintiff does not allege facts demonstrating that the City was

---

[2]The City's motion to dismiss also addresses the theory of state-created danger because "Plaintiff appears to invoke some of the language used to support the state-created danger theory of liability."  Docket No. 36 at 11.  Because the Court finds no invocation of that theory in plaintiff's amended complaint and plaintiff does not respond to the City's arguments on that issue, the Court assumes that plaintiff does not rely on that theory.

deliberately indifferent.  *Id.* at 6-8.  Third, plaintiff has not sufficiently alleged that the

Denver Police Department's policy or custom caused plaintiff's injury.  *Id.* at 8-10.

### 1.  Pertinent Policy

The amended complaint states that the City

> had a policy of deliberate indifference with respect to repeated
> constitutional violations by its police officers.  Denver reviewed complaints
> regarding its police officers but had a policy of not taking corrective action
> designed to modify their behavior in order to prevent future constitutional
> violations.

Docket No. 27 at 10, ¶ 42.  To support this claim, plaintiff states that, in ten years on the

police force, Officer Miller received at least 40 complaints against him, 17 of which

involved the use of excessive force, and some of which resulted in legal settlements.

Docket No. 27 at 3-5, ¶ 13.  Commander Murray acknowledged that the City received

"warning signs" with respect to Officer Miller, but that the City "didn't follow through in a

way to help correct his behavior."  *Id.* at 4.  In addition, plaintiff points to the City's

current policy requiring that "all officers who trigger a review are assigned to work on

fixing the issue."  *Id.*

Apart from the reference to the City's current policy of mandatory review for all

officers who receive a complaint – which may indirectly imply a prior, less rigorous

policy of review – plaintiff fails to allege a department-wide policy regarding the failure

to supervise officers.  Instead, plaintiff's allegations show a failure to take corrective

action with respect to just Officer Miller.  The question is whether municipal liability can

arise from repeated failures to supervise a single officer.

The City cites no case holding that municipal liability for a failure to supervise

cannot be based on repeated incidents of excessive force perpetrated by a single officer.  The Court finds that, based on the facts alleged by plaintiff, the failure to supervise claim is sufficient to state a plausible claim of municipal liability.  As noted earlier, in the failure to train context, that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city. . . ."  *Harris*, 489 U.S. at 390-91.  However, cause and effect is usually more clear in the failure to supervise context.  The fact that a single officer is the subject of a large number of excessive force complaints, in and of itself, creates a reasonable need to review the officer's performance to determine the legitimacy of the complaints and what may be necessary to correct any improper use of force.  Not only does plaintiff allege that Officer Miller had 17 excessive force complaints, but he alleges that some of them resulted in settlements, which plausibly suggests that the settled complaints had some merit.  The statements from Commander Murray indicate that the City received warning signs about Officer Miller's deficient performance, but that the City did not effectively supervise him in order to prevent another incident causing liability and injury to a plaintiff.  A pattern or history of excessive force claims against a single officer may demonstrate a high likelihood of similar future incidents unless that officer is supervised differently.  A failure to take corrective action in the face of such a pattern of conduct suggests a deficiency in supervision.  At this stage of the case, plaintiff adequately states a claim that the City had a custom or policy involving inadequate supervision of police officers.  *See Vann v. City of N.Y.*, 72 F.3d 1040, 1051 (2d Cir. 1995) (focusing on the supervision of a particular problem officer and finding that summary judgment for the city was inappropriate where the evidence showed an "absence of any significant

9

administrative response to [the problem officer's] resumption of his abusive misconduct upon reinstatement").

### 2. Deliberate Indifference

As to the City's second argument, in order to show deliberate indifference, plaintiff must allege that "[t]he need for more or different supervision . . . is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy of the City can be said to have been deliberately indifferent to the need." *Brown*, 227 F.3d at 1291-92. "[T]he need for more or better supervision . . . may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049 (citing *Harris*, 489 U.S. at 390; *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 122-23 (2d Cir. 1991); *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986)).

In *Vann,* the Second Circuit reversed a finding of summary judgment where the plaintiff presented evidence that the New York Police Department failed to adequately supervise a solitary officer with a history of violent conduct. *Vann*, 72 F.3d at 1050. While the plaintiff described a general policy related to the supervision of "problem policemen," the court also focused on the specific allegations describing the need for supervision of the officer in question:

> where an officer had been identified by the police department as a "violent-prone" individual who had a personality disorder manifested by frequent quick-tempered demands for "respect," escalating into physical confrontations for which he always disavowed responsibility, the need to be alert for new civilian complaints filed after his reinstatement to full-duty status was obvious.

*Id.* at 1050-51.  Plaintiff's allegations with respect to Officer Miller are similar to the facts described in *Vann.*  Based on the allegations in the amended complaint, the City was aware of Officer Miller's history of violent conduct and the corresponding risk that Officer Miller would engage in future violent conduct.

The City additionally argues that the descriptions of Officer Miller's conduct do not provide a basis to find that the City disregarded warning signs with respect to Officer Miller.  Docket No. 36 at 8.  Judges in this district have rejected § 1983 claims for municipal liability where the plaintiff merely identifies complaints filed against an officer, but fails to provide any supporting facts to suggest that the complaints should have been substantiated.  *See Rodriguez v. Chavez*, No. 12-cv-01071-PAB-MJW, 2014 WL 4627274, at *4 (D. Colo. Sept. 16, 2014); *Crespin v. Castro*, No. 09-cv-00427-MSK-MJW, 2010 WL 3894197, at *5 (D. Colo. Sept. 30, 2010).  The facts offered by plaintiff here are distinguishable.  Plaintiff has noted a large number of complaints filed against Officer Miller and quotes Commander Murray's statement that "warning signs were being flashed at us," that the Denver Police Department "got the warning signs," but that the police department "didn't follow through" in a way to prevent "liability."  Docket No. 27 at 3-5, ¶ 13.  A fair reading of the purported quote of Commander Murray is that the term liability refers to a payment to a person whose constitutional rights were violated by Officer Miller.  Thus, plaintiff adequately alleges that the City was on notice of complaints of excessive force by Officer Miller that the City should have responded to but did not in a manner to prevent constitutional violations.

As such, the Court finds that plaintiff has adequately pled facts at this stage to

11

support a claim that the City was deliberately indifferent to an obvious risk of unconstitutional action by Officer Miller.

### 3. Causation

The City alleges that plaintiff cannot demonstrate causation. Docket No. 36 at 8-10. As noted above, causation is a required element where the plaintiff alleges *Monell* liability for a failure to supervise employees. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Monell*, 436 U.S. at 691-92). "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* at 770 (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.12[B] (2013)). The City makes two arguments regarding plaintiff's allegations related to causation: first, that plaintiff's allegations are conclusory and, second, that plaintiff's allegations demonstrate an intervening change in policy. Docket No. 36 at 9-10.

The quotation from Commander Murray acknowledges that "follow through" could have "help[ed] correct" Officer Miller's behavior, but that the City did not properly act despite "warning signs." Docket No. 27 at 3-5, ¶ 13. Based on these statements, the City was aware of the need for effective supervision and was aware that proper supervision could have corrected Officer Miller's behavior, but failed to intervene. A sustained pattern of excessive force complaints against one officer that does not result in discipline or correction, which Commander Murray's quote implies, makes the probability of another violation more likely. This is sufficient at the pleadings stage in this case to demonstrate causation.

12

Last, the City argues that plaintiff acknowledges a lack of causation by alleging that Police Chief Robert White, who took office on December 12, 2011, changed the way the Denver Police Department responds to performance reviews.  Docket No. 36 at 10.  While the amended complaint is not specific as to when the policy change took place, a fair reading of paragraph 13 is that the policy change occurred after plaintiff's injury.

The Court finds that plaintiff has alleged sufficient facts to support his claim that the City's policy or custom of inadequate supervision caused plaintiff's injuries.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant City and County of Denver's Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 36] is **denied**.

DATED March 13, 2017.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge